**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JENNIFER MALONE and KRISTIE ROACH on behalf of themselves and all others similarly situated,<br>Plaintiffs,<br>vs.<br>BUILT BRANDS, LLC,<br>Defendant. | Case No. 1:25-cv-1161 (MAD/DJS)<br>**CLASS ACTION COMPLAINT** |

## INTRODUCTION

1. This is a proposed class action seeking monetary damages, restitution, and public injunctive and declaratory relief from Defendant Built Brands, LLC ("Built Brands") arising from its deceptive addition of junk fees to consumers' shopping carts.

2. When consumers browse products on Built Brands, Built Brands advertises the price of its retail items, along with an advertisement for either free or flat rate shipping. Those pricing representations are false, however, because Built Brands surreptitiously adds junk fees to consumer purchases, including a so-called "Product Protection" fees.

3. As discussed in detail herein, the assessment of these fees is deceptive and unfair, since: (a) Built Brands sneaks these fees into consumers shopping carts; (b) the fees are nothing more than an additional cost for shipping, rendering Built Brands' promise for "free" or flat-rate shipping false; (c) the fees themselves are deceptively named and described; and (d) the fees provide no added value to consumers and reasonable consumers, like Plaintiffs, would not knowingly choose to pay them, absent Defendant's deception.

4. Thousands of e-commerce customers like Plaintiffs have been assessed hidden shipping charges for which they did not bargain due to Built Brands; deceptive tactics.

5. By unfairly obscuring their true shipping costs, Defendant deceives consumers and gain an unfair upper hand on competitors that fairly disclose their true shipping charges. To wit, other major e-commerce sites do not assess such a fee.

6. Plaintiffs seeks damages and, among other remedies, public injunctive relief that fairly allows consumers to decide whether they will pay shipping costs.

**PARTIES**

7. Plaintiffs Jennifer Malone is a resident and a citizen of Cohoes, New York.

8. Plaintiffs Kristie Roach is a resident and a citizen of Franklin, Georgia.

9. Defendant Built Brands, LLC, is a food retailer headquartered in American Fork, Utah.

**JURISDICTION AND VENUE**

10. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction because:

a. the proposed Class is comprised of at least 100 members; § 1332(d)(5)(B);

b. at least one member of the proposed class is a citizen of a State other than New York, 28 U.S.C. § 1332(d)(2)(A); and

c. the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2), (6).

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Built is subject to personal jurisdiction here and regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

# FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

## I. Built Surreptitiously Adds Fees to Consumers' Carts

12. Built Brands is a retailer of protein bars and snacks. Although Built Brands sells its products at big-box retailers, Built Brands also owns and operates its own website, www.built.com. This lawsuit concerns purchases made by consumers on Built Brands' website.

13. Here's how Built Brands' deception works. When a consumer views an item on Built Brands' website, the consumer is presented with the option to "ADD TO CART" via a big bright blue button:




14. When a consumer clicks the large blue "ADD TO CART" button above, the consumer is directed to Built Brands' checkout screen. The checkout screen is riddled with deception. A the very top, the consumer is informed that their item qualifies for free shipping. At the very bottom, just before the large blue prominent "Check out" button, a "Product Protection" fee is automatically added to the consumers' cart via a tiny pre-selected toggle, without consumers having done anything at all to add the fee.




15. On information and belief, the added Product Protection fee amounts to a percentage of the transaction. The toggle is intentionally designed to go unnoticed by consumers like Plaintiffs, who did not notice the fee.

16. Once a consumer hits the large blue "Check out" button, it is too late. The fee is then added to the cart without any way of removing it:



17. Thus, if consumers even notice the very small amount added to their transactions, consumers are still left entirely unaware that the added Product Protection charge is optional, because it is presented in the cart as mandatory.

18. Thus, reasonable consumers believe they have no other choice but to pay the add-on fee, which they were never previously informed of. This is a classic bait & switch.

19. Many consumers do not notice that an additional fee is being added to their order. Others believe that they have no choice but to pay this fee. And others still notice the previously undisclosed fee, but decide to go through with the purchase anyway: they have already invested substantial time and effort inputting their information into the Defendant's system. So it doesn't make sense to start over and research whether there may be some other way to avoid the fee. So there is no incentive to reverse course—there is only an incentive to pay the fee, be done with it, and avoid the burden of finding a way to avoid the fee, if the consumer can even figure out how to avoid the fee at all after navigating Defendant's deceptive screens. The deceptive checkout practice has done its job and diverted the sale to Defendant.

20. This pre-selection and automatic opting in of consumers to junk fees is itself deceptive. Imagine a scenario in which a consumer goes to the grocery store, and while being checked out by the cashier, the cashier sneaks a pack of gum on the conveyer belt without the Plaintiffs having done anything at all to add the item or noticing that that the item was added. What happened to Plaintiffs during the online checkout process is no different.

21. Negative options, such as the one used by Built Brands, are part of an "unfortunate trend in Internet scams has been the appearance of 'dark patterns' of marketing manipulation in online sales, which trick consumers into buying things they did not intend to buy." Consumer Protection and the Law, November 2024 Update, Dee Pridgen and Jolina C. Cuaresma § 13:14.

22. As the FTC notes, "For years, unscrupulous direct-mail and brick-and-mortar retailers have used design tricks and psychological tactics such as pre-checked boxes, hard-to-find-and read disclosures, and confusing cancellation policies, to get consumers to give up their money or data." *FTC Report Shows Rise in Sophisticated Dark Patterns Designed to Trick and Trap Consumers, September 15, 2022* (available at https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-report-shows-rise-sophisticated-dark-patterns-designed-trick-trap-consumers). The FTC further notes in its *Enforcement Policy Statement Regarding Negative Option Marketing* that **"[a] 'pre-checked box' does not constitute affirmative consent."** https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf at p. 13 (emphasis added).

23. This method of adding on fees is designed to go undetected by consumers and thus provide additional revenue to Built Brands. The Wall Street Journal recently highlighted the problem, stating:

> Some brands automatically add optional coverage to orders. ***Customers have complained the fees are disclosed in small fonts, made to appear mandatory when they are not or are displayed late in the online checkout process***.

Imani Moise, *Porch Pirates Are Now Raising the Price You Pay at Checkout*, Wall Street Journal, December 25, 2024, available at https://www.wsj.com/personal-finance/package-theft-hidden-fee-higher-prices-325c4a34?mod=Searchresults_pos3&page=1 (emphasis added).

24. Upon information and belief, Built Brands is aware that by programming its website to automatically opt in consumers to "Product Protection" fees, most consumers will unknowingly purchase the "protection." On information and belief, Built is further aware that had it programmed its website to offer *optional* "protection" (requiring an opt-in), the vast majority of consumers would not purchase it.

25. Because Built Brands' practice is deceptive, Shopify, which handles the technology infrastructure for many direct-to-consumer brands and larger companies, told merchants that automatically adding optional charges at checkout will be banned, starting in February of 2025.

26. This ban is too little, too late to help the hundreds of thousands of consumers already deceived and exploited like Plaintiffs.

## II. The Add On Fees Render Promises of Free or Flat Rate Shipping False, or At Best Ambiguous

27. Even beyond the deceptive manner in which the fees are added, the fees themselves are additionally deceptive because they directly contradict other promises on Built Brands' website regarding "free" or flat-rate shipping. That is because Built Brands' add on fees are, in actuality, a disguised shipping charge.

28. Whatever the add-on fee is for—and as described herein, it is totally unclear—it is a fee somehow related to shipping of the products purchased by consumers.

29. But as described herein, Built Brands promised "free" shipping on certain orders and flat rate shipping on other orders. These were clear promises that the total, marginal cost of having products shipped—that is, moved from the retailer to the consumer—was represented by the "free" or flat rate shipping price promise. Built Brands tacks on this added fee regardless of the free or flat rate shipping promise made.

30. However, Defendant decided it could actually charge more for shipping, thereby increasing profitability, by misrepresenting the true shipping costs to consumers.

31. Defendant was or should have been aware that consumers were and would be deceived by an add-on shipping fee at the same time as a promise of "free" or flat-rate shipping was being made.

32. Because it is well known that American consumers prefer free or low-cost shipping costs, Defendant made an intentional decision to break shipping costs into two parts and thus disguise their decision to charge more for shipping.

33. The deceptively added fee is a hidden shipping fee. This renders false Built Brands' promise of a free or a flat, low-cost shipping fee.

34. By unfairly obscuring its charges to consumers, Defendant deceives consumers and gains an unfair upper hand on competitors.

35. In addition to the manner in which the fees are added and the fact that the added fees render other "free" or flat rate shipping promises false and deceptive, Defendant's fees are nonsense fees that provide little or no value to consumers.

**III. <u>Defendant's "Product Protection" Fee Is Inaccurately Named and Described and Provides No Added Value to Consumers</u>**

36. Even beyond the deceptive manner in which the fees are added and the fact that fees themselves directly contradict other promises on e-commerce retailer websites regarding "free" or flat-rate shipping, the "Product Protection" fees are also deceptively named and described.

37. First, the fee provides little or no *additional* "protection" for shipments than already exists. Online retailers like Built already provide replacements and allow for returns of products. Indeed, Built offers 30 day returns on its website for all items. Therefore, the add-on fee provides no extra protection for goods that arrive damaged. Defendant misrepresents, and omits material facts about, that truth.

38. Moreover, popular shipping services like UPS, Federal Express, USPS Priority Mail *automatically* include shipping protection for the first $100 worth of value in a package when goods are not delivered, stolen or damaged. Defendant misrepresents, and omits material facts

about, that truth, too. Thus, for the vast majority of consumers—those who are paying to ship a product less than $100—the add-on fee is entirely worthless, because they are already provided the same protection by the shippers.

39. Additionally, in the event goods are not delivered, stolen or damaged, consumers, can report the issue to their credit card company or bank, who will often reverse the charge.

40. For all these reasons, the "Product Protection" fee is deceptively named and described.

41. Even beyond the deceptive manner in which the fees are added, the fact that fees themselves directly contradict other promises on e-commerce retailer websites regarding "free" or flat-rate shipping, and the fact that the add on fees are deceptively named and described, they also provide virtually no additional value to consumers. No reasonable consumer would knowingly elect to pay for the add-on fee because it provides essentially zero additional value to consumers.

42. As described above, damaged goods may already be returned to the retailer; third party shipping services like USPS, UPS and FedEx already provide some insurance coverage; and lost or stolen packages can be reported to credit card companies for chargebacks. Accordingly, the additional fee serves no purpose.

**IV. <u>Defendant's Fees are Junk Fees and Violate Federal Guidance and California Law</u>**

43. Under federal law, this practice is called a "negative option", which is "'an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer.'" 16 C.F.R. § 310.2(w). The negative options are routinely found to violate federal laws, including the Restore Online Shoppers' Confidence Act ("ROSCA").

44. Defendant's shipping fees, such as the Product Protection fee, are precisely the type of "Junk Fee" that have come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition, March 5, 2024, available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3.

45. As the Federal Trade Commission said recently in its effort to combat Junk Fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Federal Trade Commission, FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees, October 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.'

46. In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy – for example, before the consumer "add[s] to shopping cart." See Fed. Trade Comm'n, .com Disclosures: How to Make Effective Disclosures iN Digital Advertising at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-

advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

## V. Plaintiff Malone's Experience

47. As an example, Plaintiff Malone used Defendant's website to purchase over $40 of food on December 16, 2021, to be delivered to her residence in Cohoes, New York.

48. When using the website, Plaintiff Malone was repeatedly informed that she would get free shipping as part of her purchase. Plaintiff Malone justifiably relied on this promise when choosing to make a purchase over $40.

49. However, Plaintiff Malone's purchase included a $0.89 charge for a "Product Protection" fee that was automatically and surreptitiously added to her cart, that—for the reasons described above—in fact represented an additional shipping charge.Plaintiff Malone did not know the charge existed or could be removed prior to her purchase. Plaintiff only recently discovered that the charge could be remove.

50. Plaintiff Malone would not have purchased "Product Protection" if she knew it was optional, and if it was not surreptitiously added to Plaintiff Malone's cart without Plaintiff Malone having done anything at all

## VI. Plaintiff Roach's Experience

51. As an example, Plaintiff Roach used Defendant's website to purchase over $140 of food on July 5, 2024, to be delivered to her residence in Franklin, Georgia.

52. When using the website, Plaintiff Roach was repeatedly informed that she would get free shipping as part of her purchase. Plaintiff Roach justifiably relied on this promise when choosing to make a purchase over $140.

53. However, Plaintiff Roach's purchase included a $1.97 charge for a "Product Protection" fee that was automatically and surreptitiously added to her cart, that—for the reasons described above—in fact represented an additional shipping charge.

54. Plaintiff Roach did not know the charge existed or could be removed prior to her purchase. Plaintiff only recently discovered that the charge could be removed.

55. Plaintiff Roach would not have purchased "Product Protection" if she knew it was optional, and if it was not surreptitiously added to Plaintiff Roach's cart without Plaintiff Roach having done anything at all.

## CLASS ALLEGATIONS

56. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements.

> All persons who, during the applicable statute of limitations, were charged a Product Protection Fee or similar fee by Defendant.

57. Plaintiffs also bring this action on behalf of a New York and Georgia Subclass.

58. Plaintiffs reserve the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

59. Excluded from the Class are Defendant, its consumers, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all personal accountholders who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

60. The members of the Class are so numerous that joinder is impractical. The Class consist of at least thousands of members, the identity of whom is within the knowledge of, and can be ascertained only by resort to, Defendant's records.

61. The claims of the representative Plaintiffs are typical of the claims of the Class he seeks to represent in that the representative Plaintiffs, like all members of the Class, were charged improper and deceptive fees as alleged herein. The representative Plaintiffs, like all members of the Class, were damaged by Defendant's misconduct in that they were charged Product Protection fees. Furthermore, the factual basis of Defendant's misconduct is common to all members of the Class and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class. And Defendant has no unique defenses that would apply to Plaintiffs and not the Class.

62. There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual members of the Class.

63. The questions of law and fact common to the Class include, but are not limited to, the following:

a. Whether Defendant's assessment of Product Protection fees was unfair, deceptive, or misleading;

b. Whether Defendant's assessment of Product Protection fees breached the contract;

c. The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

d. Whether Plaintiffs and the Class are entitled to declaratory and injunctive relief and the nature of that relief.

64. Plaintiffs' claims are typical of the claims of other members of the Class, in that they arise out of the same wrongful Product Protection fee policies and practices. Plaintiffs have

suffered the harm alleged and has no interests antagonistic to the interests of any other member of the Class.

65. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions against financial institutions. Accordingly, Plaintiffs is an adequate representative and will fairly and adequately protect the interests of the Class.

66. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual member of the Class's claim is small relative to the complexity of the litigation, and due to the financial resources of Defendant, no member of the Class could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the members of the Class will continue to suffer losses and Defendant's misconduct will proceed without remedy.

67. Even if members of the Class themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

68. Plaintiffs knows of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

69. Defendant has acted or refused to act on grounds generally applicable to each of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each Class as a whole.

70. All conditions precedent to bringing this action have been satisfied and/or waived.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of New York General Business Law Section 349 *et seq.***
**(On Behalf of Plaintiff Malone and the New York Subclass)**

71. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

72. This cause of action is asserted on behalf of the Class, whose members enjoy the protections of Article 22-A of the New York General Business Law, the Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 349 *et seq.*, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. GEN. BUS. LAW § 349(a).

73. Built Brands' policies and practices complained of herein were and are consumer-oriented, in that they affect all consumers who made online purchases from Built Brands.

74. The complained-of policies and practices were and are misleading in a material respect, because (a) Built Brands sneaks these fees into consumers' shopping carts using a prechecked box; (b) the fees are nothing more than an additional cost for shipping, rendering Built Brands' promise for "free" shipping false; (c) the fees themselves are deceptively named and described; and (d) the fees provide no added value to consumers and reasonable consumers.

75. Reasonable consumers, like Plaintiff Malone, would not knowingly choose to pay the Product Protection fees, absent Defendant's deception.

76. Plaintiff Malone and members of the New York Subclass were injured as a result of Built Brands' policies and practices, in that they were charged Product Protection fees in a deceptive manner as described herein.

77. Built Brands' actions were willful and knowing.

78. As redress for Built Brands' repeated and ongoing violations of these consumer protection statutes, Plaintiff Malone and members of the New York Subclass each seek actual damages, treble damages, statutory damages, injunctive relief, and attorney's fees and costs.

**SECOND CAUSE OF ACTION**
**False Advertising – N.Y. Gen. Bus. Law § 350**
**(On Behalf of Plaintiff Malone and the New York Subclass)**

79. The preceding allegations are incorporated by reference.

80. N.Y. Gen. Bus. Law § 350 provides that "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

81. Defendant's actions regarding the Product Protection fee, as described herein, constitutes false advertising in the conduct of the business trade or commerce of footwear.

82. Plaintiff Malone and the class have been injured by Defendant's violations of N.Y. Gen. Bus. Law § 350.

83. Defendant's false advertising occurred, and continues to occur, in the course of Defendant's business.

84. As an actual and proximate result of Defendant's misconduct, Plaintiff Malone and the New York Subclass were injured and suffered damages.

85. As redress for Defendant's repeated and ongoing violations of this consumer protection statute, Plaintiff Malone and the other members of the New York Subclass each seek

actual damages, treble damages, statutory damages, injunctive relief, and attorney's fees and costs.

## THIRD CAUSE OF ACTION
**Violation of Georgia Fair Business Practices Act, O.C.G.A. Sections 10-1-390 *et seq.***
**(On Behalf of Plaintiff Roach and the Georgia Subclass)**

86. The preceding allegations are incorporated by reference.

87. Defendant has engaged in consumer transactions and consumer acts or practices in the conduct of trade or commerce within the state of Georgia as defined in Georgia Code Section 10-l-392(a)(7), (10), and (28).

88. Built Brands' assessment of these Product Protection fees violates the GFPBA since: (a) Built Brands sneaks these fees into consumers shopping carts; (b) the fees are nothing more than an additional cost for shipping, rendering Built Brands' promise for "free" or flat-rate shipping false; (c) the fees themselves are deceptively named and described; and (d) the fees provide no added value to consumers and reasonable consumers, like Plaintiff Roach, would not knowingly choose to pay them, absent Defendant's deception.

89. Plaintiff Roach and the putative class were reasonably relied upon Built Brands' representations and deceptive screen flow in making their purchase.

90. Built Brands' acts and practices violate Georgia Code Section 10-393(a), which prohibits unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in the conduct of trade or commerce.

## FOURTH CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

91. Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

92. To the detriment of Plaintiffs and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

93. Plaintiffs and the Class conferred a benefit on Defendant.

94. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

95. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

96. Plaintiffs and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## FIFTH CAUSE OF ACTION
**Breach of Contract**
**(On Behalf of Plaintiffs and the Class)**

97. Plaintiffs repeat and reallege the above allegations as if fully set forth herein.

98. Plaintiffs and Defendant have contracted for the purchase of merchandise.

99. No contract provision authorizes Defendant to be able to charge add on fees to customers.

100. Defendant breached the terms of its contract with consumers by charging add on fees such as the Product Protection fee.

101. Plaintiffs and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

102. Plaintiffs and members of the Class have sustained damages as a result of Defendant's breach of the contract and breach of the implied covenant of good faith and fair dealing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the members of the Class seek an Order:

a. Certifying the proposed Class pursuant to Rule 23;

b. Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

c. Declaring the Defendant has committed the violations of law alleged herein;

d. Providing for any and all injunctive relief the Court deems appropriate;

e. Awarding statutory damages in the maximum amount for which the law provides;

f. Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

g. Providing for any and all equitable monetary relief the Court deems appropriate;

h. Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

i. Awarding Plaintiffs their reasonable costs and expenses of suit, including attorneys' fees;

j. Awarding pre- and post-judgment interest to the extent the law allows; and

k. Providing such further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury on all issues so triable.

Date: August 25, 2025

Respectfully submitted,

**KALIELGOLD PLLC**

By: /s/Sophia G. Gold

Sophia G. Gold (Bar Roll No. 701241)
KalielGold PLLC
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783
sgold@kalielgold.com

Sarah M. Levin (Bar No. 5762745)
Amanda J. Rosenberg (*pro hac vice* forthcoming)
Jeffrey D. Kaliel (*pro hac vice* forthcoming)
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 280-4783
slevin@kalielgold.com
jkaliel@kalielpllc.com
arosenberg@kalielgold.com

**JENNINGS & EARLEY PLLC**
Tyler B. Ewigleben (*pro hac vice* forthcoming)
500 President Clinton Avenue, Suite 110
Little Rock, Arkansas 72201
Telephone: (317) 695-1712
tyler@jefirm.com

*Counsel for Plaintiffs and the Proposed Class*